[Crim. No. 38986. Second Dist., Div. Four. Feb. 17, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
LEANDRO LOMAS TELLEZ et al., Defendants and Appellants.

**COUNSEL**

Shan K. Thever, under appointment by the Court of Appeal, L. Robert Connors, Arnold & Connors and Bradley A. Arnold for Defendants and Appellants.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Howard J. Schwab and Carol Slater Frederick, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WOODS, J.**—Appellants were charged with possession of heroin. Following denial of their joint motion to suppress evidence pursuant to

Penal Code section 1538.5, defendants pleaded guilty and were sentenced.

By this appeal, each appellant contends that the trial court erred in refusing to suppress the challenged evidence.

The following evidence was introduced at the hearing on the 1538.5 motion: Officer John Peters testified that he received an anonymous telephone call on July 12, 1979, informing him that appellant Tellez was selling heroin from his home. Tellez was well known to Officer Peters, and a stakeout was conducted the same day at Tellez' home address. That afternoon, appellant Vasquez arrived at Tellez' residence in a car driven by an unidentified female. Vasquez went into Tellez' house, remained five to ten minutes, then left in the same car. Officer Peters and Officer Applegarth followed him in separate unmarked vehicles. They followed the car onto the freeway where it traveled at erratic speeds from 15 to 30 miles per hour and then onto an offramp where it came to a stop. The officers had intended to stop the vehicle for erratic driving, but they had no lights with which to effect the stop. It became unnecessary since the car stopped voluntarily.

The officers stopped behind the Vasquez car and quickly approached the passenger side. They observed Vasquez tearing open a pink balloon and throwing white powder out of the window; then he put the balloon in his mouth and attempted to swallow it while trying to knock the white powder off the door onto which it had adhered. Both officers, who were qualified narcotics experts, recognized the powder on the car as resembling heroin.

Vasquez and the female driver were both arrested. The female told the officers that Vasquez had scored some heroin for both of them at his connection, but she did not know the connection's name. Officer Applegarth testified that two weeks earlier a reliable tested informant told him that, although he had not been able to purchase heroin from Tellez, others had taken him to that home and had gone in and purchased heroin for him, which they said they bought from Tellez.

Officer Applegarth then telephoned Tellez' parole officer, who informed him that Tellez was still on active parole and that a condition of his parole release was that he submit his person, property, and residence to a search and seizure at any time by any police officer.

Armed with all of the foregoing information, the officers went to Tellez' house. Two officers approached the front door and two the rear. The officers at the front door saw Tellez in the living room; Tellez looked directly at them. Officer Applegarth knocked on the door and announced, "Police officers, narcotics investigation. Open the door." Tellez ran toward the back of the house and the officers forced entry. They stopped him in the dining room and spoke to him about his parole status. He admitted that he was on parole subject to search and seizure conditions. The officers then conducted a search of the home, during which they recovered one ounce of heroin in the egg portion of the refrigerator in Tellez' kitchen. Tellez thereafter admitted that the heroin was his, and that he intended to sell it.

## I

■ Appellant Vasquez' contention that the trial court improperly denied his suppression motion warrants only brief discussion. There is no merit to his argument that his automobile was unreasonably detained. It was not detained. The officers saw in plain view contraband which appellant was trying desperately to destroy or conceal. There was adequate probable cause to justify the seizure of the heroin and the arrest of Vasquez.

## II

Appellant Tellez contends that the search of his residence could not be justified on the basis of parole conditions, since he was not in fact on parole at the time of the search. The confusion over appellant's parole status arises from the following set of facts: Appellant was previously granted parole on May 28, 1978, for a period of one year. Thus, his parole status was scheduled to terminate on May 27, 1979. During the one-year-parole period, Senate Bill 1057 was enacted on January 1, 1979. That bill, amending Penal Code section 3000, extended the parole period to five years for persons sentenced to life in prison and three years for all other persons. As a result of that legislation, the parole board automatically extended parole periods for all persons then serving on parole. Appellant's records were adjusted to reflect that he would remain on parole until May 27, 1982, an additional two years after his previously established termination date.

The offense with which we are concerned occurred on July 12, 1979. Had his parole terminated in May 1979, no search and seizure condi-

tions would have been in existence to justify the instant search. If his parole had been legitimately extended, the opposite result is mandated. At issue, then, is the retroactivity of the new Penal Code section 3000. That issue has already been resolved in several recent California cases. "[T]he legislation does not apply, or may not constitutionally be applied, to persons released on parole before January 1, 1979." (*In re Thomson* (1980) 104 Cal.App.3d 950, 953 [164 Cal.Rptr. 99]. To the same effect see *In re Morales* (1981) 115 Cal.App.3d 456, 462 [171 Cal.Rptr. 425]; *In re Bray* (1979) 97 Cal.App.3d 506, 509 [158 Cal.Rptr. 745]; *In re Harper* (1979) 96 Cal.App.3d 138, 141-142 [157 Cal.Rptr. 759].) Appellant's parole status terminated on May 27, 1979; he was not on parole on the date of the search in question.

This fact, however, does not compel suppression of the evidence recovered in the search conducted by the officers. ■ It is uncontradicted that the officers were informed by appellant's parole officer and appellant, that he was in fact on parole. Their reliance on this information was reasonable and they acted thereon in good faith. As we previously stated in *People* v. *Spratt* (1980) 104 Cal.App.3d 562, 567 [164 Cal.Rptr. 78]: "The test of legality of a search is that of reasonableness and the court must look to all of the circumstances known to the officers prior to implementing the search. [Citation.]"

It is clear that a good faith mistake of law will not justify an unlawful search or seizure. (See *People* v. *Teresinski* (1982) 30 Cal.3d 822, 831, fn. 6 [180 Cal.Rptr. 617, 640 P.2d 753].) However, California courts have recognized that a reasonable mistake of fact, entertained in good faith by arresting officers, will authorize a search or arrest, even if the facts subsequently prove to be mistaken. As the California Supreme Court pointed out in *People* v. *Hill* (1968) 69 Cal.2d 550, 553-554, at footnote 4 [72 Cal.Rptr. 641, 446 P.2d 521], an arrest is valid if an officer has reasonable cause to believe that the person to be arrested has committed a felony, whether or not a falony has in fact been committed. (Pen. Code, § 836, subd. 3.) In *Hill*, the police had probable cause to arrest Hill, but mistakenly arrested Miller. The court found that the officers honestly and reasonably believed that the man arrested was Hill; such reasonable belief validated the arrest. "The purpose of the exclusionary rule is to deter unlawful police conduct." (*Lockridge* v. *Superior Court* (1970) 3 Cal.3d 166, 171 [89 Cal.Rptr. 731, 474 P.2d 683].) "We do not see how that purpose would be advanced by ex post facto condemnation of an arrest, apparently valid when made. The Constitution does not demand judicial overkill." (*People* v. *Carnesi* (1971) 16 Cal.App.3d 863, 868-869 [94 Cal.Rptr. 555].)

It is well established that the later discovery of facts which, if known to the officers at the time, would have justified a search, does not validate conduct which was unlawful. (See *In re Martinez* (1970) 1 Cal.3d 641 [83 Cal.Rptr. 382, 463 P.2d 734]; and *People* v. *Superior Court (Simon)* (1972) 7 Cal.3d 186 [101 Cal.Rptr. 837, 496 P.2d 1205].) As we explained in *People* v. *Spratt, supra*, 104 Cal.App.3d at page 567: "[T]he purpose of the exclusionary rule would clearly be frustrated if the courts were required to uphold a search conducted on unreasonable grounds simply because the prosecuting authorities belatedly managed to devise an alternate theory on which the officer could have acted reasonably if he had known of it." It is equally true that frustration of purpose would result by the suppression of evidence obtained by officers who conduct themselves reasonably and properly under a state of facts which they justifiably believe to exist.

Therefore, the lower court properly denied appellant's motion to suppress evidence.

The judgments are affirmed.

Files, P. J., and McClosky, J., concurred.

On March 19, 1982, the opinion was modified to read as printed above. The petition of appellant Tellez for a hearing by the Supreme Court was denied April 21, 1982.