[No. B074599. Second Dist., Div. Two. Mar. 1, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
VICTORIA FLEMING, Defendant and Appellant.

**COUNSEL**

Thomas F. Coleman, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Robert F. Katz and Molly J. Steber, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**NOTT, J.**—Among other issues, this case presents the question of whether a trial court may require an applicant for drug diversion to submit to reasonable, but warrantless, searches as a condition of his diversion program. We reluctantly conclude that under the law as currently interpreted, it may not do so.

Appellant Victoria Fleming was charged in count I with possession for sale of a controlled substance (Health & Saf. Code, § 11378) and in count II with possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)). It was also alleged that she was personally armed with a firearm during the commission of the foregoing violations (Pen. Code, § 12022, subd. (c)). She pled guilty to both counts and no contest to the special allegation.

### CONTENTIONS

Appellant contends (1) the trial court erred in denying her motion to suppress on the ground that the arresting officer conducted an invalid, warrantless search, (2) insufficient evidence supported the finding of consent, and (3) the good faith exclusionary rule does not apply to the facts of this case.

### FACTS

At appellant's preliminary hearing, Detective Neil Hopkins testified that on March 27, 1992, he went to appellant's residence after receiving complaints that she had been selling drugs. Three or four months earlier, Hopkins had issued appellant a citation for possession of marijuana after receiving similar complaints. From that contact, Hopkins was aware that appellant had become subject to a search and seizure condition, though he apparently did not know in what context this requirement had been imposed.

Wearing a police "raid" jacket, Hopkins knocked on appellant's door and identified himself as a police officer to Jeffrey Holder, the man who answered. Holder advised that appellant still lived there and allowed the

officer to enter. Inside they found appellant, and Hopkins inquired if she was still "on probation" and subject to "search and seizure." When appellant replied in the affirmative, Hopkins told her he had received several anonymous phone tips that she was dealing drugs. He then asked her to empty her pockets onto the coffee table.

Appellant removed a plastic pill bottle which contained a small plastic box. Inside the box were 20 pills and 7 bindles which contained between .05 grams and 2.20 grams of methamphetamine. In response to Hopkins's question whether she had any other drugs in the house, appellant took him upstairs and from a desk drawer gave him another bindle of methamphetamine, $200, and a loaded automatic pistol.

At her preliminary hearing, appellant's motion to suppress the narcotics and the gun was denied. The magistrate took judicial notice that on June 8, 1990, as a condition of a grant of diversion, appellant had agreed that she would "submit her person and property to search and seizure at any time of day or night by any law enforcement officer or by the probation officer with or without a warrant." He also determined that appellant consented to the search.

The motion to suppress was renewed in superior court and again denied. As noted, appellant then withdrew her not guilty plea, pled guilty to both counts, and admitted the special allegation. She was placed on probation for three years with the condition that she spend three hundred sixty-five days in county jail. She was further required not to use or possess any restricted drugs, to cooperate with her probation officer in a drug rehabilitation program, to submit to drug testing, and to submit her person and property to search or seizure.

## Discussion

### I.  *Search and Seizure Condition*

█  With considerable misgivings, we agree with appellant's assertion that under long-standing case law her waiver of search and seizure protections as a condition of a grant of diversion was improper.

Under Penal Code section 1000 et seq., eligible drug offenders may be considered for a diversion program in lieu of criminal prosecution. (*Morse* v. *Municipal Court* (1974) 13 Cal.3d 149, 153 [118 Cal.Rptr. 14, 529 P.2d 46].) The statutory objective of diversion is to permit "the courts to identify the experimental or tentative user before he becomes deeply involved with

drugs, to show him the error of his ways by prompt exposure to educational and counseling programs in his own community, and to restore him to productive citizenship without the lasting stigma of a criminal conviction" and to reduce "the clogging of the criminal justice system." (*People* v. *Superior Court* (*On Tai Ho*) (1974) 11 Cal.3d 59, 61-62 [113 Cal.Rptr. 21, 520 P.2d 405].) The court must find that the defendant would be benefited by diversion and the defendant must consent to the diversion proceedings, waiving his right to a speedy trial. (Pen. Code, §§ 1000.1-1000.2.)

In *Morse* v. *Municipal Court*, *supra*, 13 Cal.3d 149, rather than initially consenting to diversion, the petitioner pled not guilty to charges of possession of marijuana and made a motion to suppress certain evidence, which was denied. Only after failing in this effort did petitioner advise the court that he would be amenable to diversion, which request was rejected on the basis that he theretofore had elected to proceed through the criminal justice system.

Primarily focusing on the narrow question of "how far into the criminal process a defendant may go before he can no longer be afforded the right to consent to consideration for diversion under section 1000.1" (*Morse* v. *Municipal Court*, *supra*, 13 Cal.3d at p. 155, italics omitted), the majority of our Supreme Court ascribed to the diversion statute the broad aim of facilitating rehabilitation, a goal it felt would not be accomplished should the defendant be required to forfeit his ability "to test the strength of the evidence against him at the outset of the case." (*Id.*, at p. 158, italics omitted.) It therefore held that such a *pre*condition, not being expressly set forth in the statute, could not be imposed. (*Id.*, at p. 159.)

A similar result was reached in *Parra* v. *Municipal Court* (1978) 83 Cal.App.3d 690, 694 [148 Cal.Rptr. 203], which held that a court may not require an express admission of guilt as a *pre*condition to diversion.

*Frederick* v. *Justice Court* (1975) 47 Cal.App.3d 687 [121 Cal.Rptr. 118], however, expanded the *Morse* holding regarding *pre*conditions to include and prohibit a search condition being imposed after diversion had been granted and during the course thereof. It concluded there was no compelling necessity to require the divertee to forego his or her constitutional right to be subjected to a search only after an appropriate warrant has issued or in an emergency situation.

Were we writing upon a clean slate we would reach a different conclusion. In light of the fact that the person eligible for the diversion program has identified himself or herself as, at a minimum, an experimental or tentative

narcotic user in need of assistance, it would not seem unreasonable to strengthen his or her resolve in the same manner utilized for those on formal probation. That is, with knowledge he or she may be subject to a reasonably conducted search at any time, a divertee, like a probationer, would be less inclined to have narcotics or dangerous drugs in his or her possession. (Cf. *People* v. *Mason* (1971) 5 Cal.3d 759, 763 [97 Cal.Rptr. 302, 488 P.2d 630], overruled on other grounds in *People* v. *Lent* (1975) 15 Cal.3d 481, 486, fn. 1 [124 Cal.Rptr. 905, 541 P.2d 545].) Similar constructive restrictions may be imposed upon narcotics addicts, who also have not been found guilty of a crime. (*People* v. *Myers* (1972) 6 Cal.3d 811, 819, and fn. 4 [100 Cal.Rptr. 612, 494 P.2d 684].)

However, the court in *Frederick* v. *Justice Court, supra,* 47 Cal.App.3d 687 reasoned that since a search and seizure condition was not expressly authorized by statute as in the case of a narcotic addict and probationer, its exclusion was to be negatively implied.[1]

Nonetheless, the commonality of drug use and the incredibly far-reaching and deleterious effect it has upon our community may not have been fully comprehended in our society of 20 years ago, though even then the extreme recidivism rate was recognized. (*People* v. *Mason, supra,* 5 Cal.3d at p. 764, fn. 2.) Defendants who accept a grant of diversion will not always succeed in transforming themselves into drug free, law abiding citizens. In the present instance, while appellant was able to convince the court she was a viable candidate for diversion, upon receiving such a grant she was soon back on the street, engaged in the sale of narcotics.

Regrettably, this scenario occurs only too frequently since it is not uncommon for someone who is a confirmed narcotic user or seller to be granted diversion. In addition, even the true experimental user, though not yet addicted, could benefit from a search requirement as readily before, as after, a conviction. Consequently, we perceive no logical reason why the trial court should not have the discretion to impose similar conditions on diversion, thereby fulfilling the statutory purpose of treatment and rehabilitation. (*People* v. *Superior Court* (*On Tai Ho*), *supra,* 11 Cal.3d. 59, 61.)

Indeed, given the opportunity to proceed under a grant of diversion rather than face criminal prosecution, it is difficult to perceive how a sincere

[1]With respect to conditions of probation, Penal Code section 1203.1, subdivision (j), states, in pertinent part, that "[t]he court may impose and require any or all of the above-mentioned terms of imprisonment, fine, and conditions, and other reasonable conditions, as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer. . . ." Section 3152 of the Welfare and Institutions Code states that persons in outpatient status shall be subject to periodic and surprise testing for narcotic use.

defendant could reasonably object to such a requirement since even the searches thus authorized may not be conducted in an unreasonable or harassing fashion. As our Supreme Court has unanimously stressed: "We do not suggest that searches of probationers may be conducted for reasons unrelated to the rehabilitative and reformative purposes of probation or other law enforcement purposes. A waiver of Fourth Amendment rights as a condition of probation does not permit searches undertaken for harassment or searches for arbitrary or capricious reasons. [Citations.]" (*People* v. *Bravo* (1987) 43 Cal.3d 600, 610-611 [238 Cal.Rptr. 282, 738 P.2d 336].)

We also note that the 1992 amendment of the diversion statute gives the court, rather than the district attorney, the power to refer a case to the probation department, arguably indicating the intent of the Legislature to vest wider discretion with the court. Nonetheless, and despite our views, we are loathe to reject a rule of such long standing, at least where, as here, it is not necessary to affirm an otherwise correct judgment. We, therefore, will content ourselves with (1) urging our Supreme Court to conduct an early reconsideration of this entire field and, if necessary, (2) calling upon our Legislature to modify Penal Code section 1000 et seq., to explicitly give the trial court discretion to impose conditions it deems fitting and proper to carry out the purpose of the statute.

## II. *Good Faith Exception to the Exclusionary Rule*

■ We need not weigh the merits of appellant's contention that her consent to the search that revealed the proofs of her guilt was "involuntary" since we disagree with appellant's contention that the good faith exception to the exclusionary rules is inapplicable. (Cf. *People* v. *Mason, supra,* 5 Cal.3d 759, 763, fn. 1.)

In *United States* v. *Leon* (1984) 468 U.S. 897, 903-906 [82 L.Ed.2d 677, 685-688, 104 S.Ct. 3405], the Supreme Court held, in essence, that the exclusionary rule should not be applied when an officer conducting a search objectively acts in good faith based on a warrant issued by a detached and neutral magistrate that subsequently is determined to be invalid. (*People* v. *Barbarick* (1985) 168 Cal.App.3d 731, 739 [214 Cal.Rptr. 322].) In *Leon,* the search warrant issued by the magistrate was later found to be lacking in probable cause. Refusing to suppress the evidence, the court concluded that deterrence of police misconduct would not be served (*United States* v. *Leon, supra,* at pp. 916-922 [82 L.Ed.2d at pp. 694-698), and that an officer acting in good faith cannot be expected to question the legal conclusions of the issuing magistrate. (*Id.,* at pp. 918-921 [82 L.Ed.2d at pp. 695-697].)

In *Barbarick,* a magistrate issued a search condition to a misdemeanor "own recognizance" (OR) release. The court held that the magistrate made a

mistake of law since no statute or case law authorized such a search condition "merely because the judge is concerned that defendant will continue to engage in criminal conduct." (*People* v. *Barbarick*, *supra*, 168 Cal.App.3d at pp. 736-737.) However, the court affirmed the denial of the motion to suppress the evidence, finding that the officer acted in good faith. (*Ibid.*)

Here, we find that the first prong of the good faith exception rule is met in that the magistrate issued a facially valid condition to the grant of diversion. Appellant urges that the instant situation is distinguishable from *Barbarick* because there it was ambiguous whether a search condition could be attached to an OR release, while here, error was clear under *Frederick* v. *Justice Court*, *supra*, 47 Cal.App.3d 687. However, the focus of the exclusionary rule is to "deter police misconduct, not to correct the errors of judges or magistrates." (*Miranda* v. *Superior Court* (1993) 13 Cal.App.4th 1628, 1632 [16 Cal.Rptr.2d 858].) "Where the defect in paperwork derives not from police negligence, but from judicial error, no remedial benefit will come from suppressing the evidence." (*Ibid.*) Here, the error was not caused in whole or part by the police. (See, e.g., *People* v. *Ivey* (1991) 228 Cal.App.3d 1423, 1426 [279 Cal.Rptr. 554] [exclusionary rule should apply where error of official transmission of misinformation by police occurred].) Despite appellant's arguments to the contrary, both *Leon* and *Barbarick* held that an improper legal determination, i.e., a mistake of law made by the magistrate in issuing a facially valid search condition, falls within the good faith exception to the exclusionary rule. (*People* v. *Barbarick*, *supra*, 168 Cal.App.3d at p. 739; see also *People* v. *Tellez* (1982) 128 Cal.App.3d 876 [180 Cal.Rptr. 579] [motion to suppress properly denied where, as a matter of law, parole with search condition had terminated before search].)

Although, as to the second prong, appellant argues that the arresting officers did not make a "reasonable mistake of law," and therefore did not act in good faith, we find otherwise. Officers must act in objective good faith and have a reasonable knowledge of what the law prohibits. (*People* v. *Barbarick*, *supra*, 168 Cal.App.3d at p. 740.) Here, Hopkins testified that he knew appellant was under a search and seizure condition because of his previous contact with her. He specifically asked her if she was "on probation" and subject to a search and seizure condition. She replied in the affirmative.

We, therefore, conclude, as in *People* v. *Barbarick*, *supra*, 168 Cal.App.3d 731 that the officer acted in good faith. Further, even had he known that this condition arose from a diversion, rather than a formal probation, and there was no evidence that he did, his failure to appreciate this fine distinction

when the magistrate had not, did not render his conduct unreasonable. To apply the exclusionary rule here would serve neither to deter unlawful police activity nor to ensure the integrity of the judicial process.

The motion to suppress was properly denied.

## DISPOSITION

The judgment is affirmed.

Gates, Acting P. J., and Fukuto, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 18, 1994. Mosk, J., was of the opinion that the petition should be granted.