Filed 7/31/13  In re Trevor G. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re TREVOR G., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>                v.<br><br>TREVOR G.,<br><br>        Defendant and Appellant. | F066001<br><br>(Super. Ct. No. 513089)<br><br>**OPINION** |

### THE COURT*

APPEAL from a judgment of the Superior Court of Stanislaus County.  Nan Cohan Jacobs and Susan D. Siefkin, Judges.†

Arthur L. Bowie, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Senior Assistant Attorney General, Kathleen McKenna, Deputy Attorney General, for Plaintiff and Respondent.

-ooOoo-

---

*        Before Gomes, Acting P.J., Franson, J., and Peña, J.

†        Judge Jacobs presided over the deferred entry of judgment hearing.  Judge Siefkin presided over the joint jurisdiction and disposition hearing.

## INTRODUCTION

On September 6, 2012, a first amended petition was filed pursuant to Welfare and Institutions Code section 602[1] alleging that appellant, Trevor G., committed first degree burglary (Pen. Code, § 459, count 1) and three counts of grand theft of a firearm (Pen. Code, § 487, subd. (d)(2), counts 2, 3, 4). The prosecutor notified appellant that he was eligible for deferred entry of judgment (DEJ). The prosecutor and probation officer recommended appellant was not suitable for DEJ.

The hearing on whether to grant DEJ was continued on September 4, 2012, because the original report prepared by the probation department was inadequate. On September 20, 2012, the juvenile court denied appellant's request for DEJ. On October 9, 2012, appellant entered into a plea agreement in which he waived his constitutional rights and admitted counts 2 and 3 in exchange for the dismissal of the remaining allegations. The court placed appellant on probation upon various terms and conditions and in his parents' custody.[2]

On appeal, appellant contends the juvenile court abused its discretion in finding him unsuitable for DEJ.

## SUITABILITY INFORMATION AND HEARING

On August 23, 2012, Officer Brar of the Modesto Police Department was dispatched to appellant's home to investigate a residential burglary. When appellant's mother arrived home after work, she found her bedroom door locked. The sliding glass

---

[1] Except as otherwise indicated, all statutory references are to the Welfare and Institutions Code.

[2] Appellant had served 13 days of his commitment. The juvenile court noted appellant had been on house arrest and ordered him to remain on house arrest for the balance of his 60-day commitment on the advice of both the prosecutor and appellant's counsel.

2

door from the bedroom to the backyard, however, was open. Appellant's mother entered through the sliding glass door and found the bedroom had been ransacked. Appellant's father kept guns in a locked closet and was the only person with access to the key. Three of father's guns were missing after the burglary.

Appellant's mother told Brar that appellant was hanging out with the wrong crowd. Appellant told his mother that at 4:15 p.m. he was locked out of the house and was waiting for a ride from his girlfriend. When his girlfriend did not arrive, appellant said he went to J.P.'s home.

Brar could not find evidence of forced entry into the bedroom. Brar went to J.P.'s home. J.P.'s mother stated appellant was not at her house but she had seen him two doors down at N.L.'s home. N.L. told Brar appellant had stayed with him that afternoon for 30 to 45 minutes and that appellant had been bragging about his father's gun collection. N.L. warned appellant to stop showing off or someone would take the guns. Brar searched N.L.'s home for weapons, but did not find any.

Brar went back to appellant's home and told appellant he knew appellant was lying about his whereabouts and appellant was not with J.P. that afternoon but with N.L. Appellant confessed that he approached a friend with the nickname C. and told him that he (appellant) wanted a burglary committed. Appellant knew C. was a gang member. C. told appellant he knew someone who "would be willing to assist."

C. set up a meeting between appellant and someone unknown to appellant a few days before the burglary. Appellant told this third person that no one would be in his residence on August 23, 2012, between 4:15 p.m. and 6:30 p.m. Appellant told the third person he could burglarize the home and where his father stored the gun collection. Appellant told the third person he would leave the sliding glass door to his parents' bedroom open.

3

Appellant had no prior record except for a misdemeanor arrest for theft. Appellant had been expelled from school as a sophomore for fighting, but was currently passing all of his classes. Appellant had 10 to 15 suspensions for talking in class, not following the dress code, and for being tardy. Appellant told the probation officer that he got along well with everyone in his family except his father. Appellant reported smoking marijuana every other day and denied any involvement with gangs. Two letters from school administrators indicated appellant was an asset to class discussion, had great manners, interacted with people respectfully, realized he was wrong in his actions, had been an excellent student for two years, had a good work ethic, had no major discipline issues, and was on track to graduate at the end of the school year.

Appellant's father stated two of the three stolen guns were handed down to him by his grandfather and were irreplaceable. Father believed his son should be placed on house arrest, be placed on probation for a long time and receive counseling. Father also suggested that his son be placed in a "scared straight program." Appellant had also run away from home.

The probation officer determined that appellant's behavior at home was fair, his school behavior was poor, and he smoked marijuana every other day. Although appellant denied membership in a gang, he contacted a gang member to burglarize his parents' home. The probation officer described the crime as sophisticated and concluded appellant required the supervision and intervention services provided by a wardship and did not recommend DEJ.

At the DEJ hearing, defense counsel noted appellant and his father were willing to participate in counseling to improve their poor relationship. Defense counsel further argued appellant's offense was not sophisticated and that it was not fair to classify him as criminally inclined. Defense counsel pointed out that appellant had run away for a few hours three years ago and both parents wanted to monitor appellant.

4

The juvenile court discounted several factors that the probation department and the prosecutor relied upon as disqualifying appellant for DEJ. The court noted appellant's expulsion from school, disciplinary problems at school, and his running away from home were old news and the court was not concerned with those issues. The court further explained that if marijuana use was a disqualifying factor for DEJ, "we wouldn't have very many kids on D.E.J." The court indicated the issues of concern were the facts underlying appellant's offense.

The court observed that this case was "really tough" and "difficult" because it did not fall within a standard category. The court found the facts of the case very troubling because appellant had invited the burglars into his own home because he was apparently having a dispute with his father. The court noted it is common for kids in dispute with their parents to stay out late, hang out with people the parents do not approve of, or wear objectionable clothing. The court found what happened here was beyond the normal parent-teen conflict. Appellant deliberately allowed gang members into the family home to steal weapons, which made this offense a lot more serious.

The court stated that gang members are known to engage in illegal activity involving weapons, something reported in the newspaper every day. The problem is so common that the Modesto Police Department published a booklet on gang awareness that the court had been providing to parents. The court found appellant had let gang members into his home and provided them with the information they needed to steal guns that could be used for future crimes. The court found appellant's conduct to be sophisticated and noted it had been planned in advance. The court was troubled by appellant's conduct.

The court also observed appellant's conduct was going in a backward direction than he had been headed before. The court found appellant was not likely to be rehabilitated and denied DEJ.

## DISCUSSION

Appellant contends the court abused its discretion in finding appellant "unsuitable" for DEJ. Appellant argues the juvenile court erred in finding his offense was sophisticated and he provided overwhelming evidence that he was suitable for DEJ. We agree with appellant that his crime was not sophisticated, that the juvenile court erred in relying on this factor, and will remand for a new DEJ hearing.

The DEJ provisions of section 790 et seq. provide that "in lieu of jurisdictional and dispositional hearings, a minor may admit the allegations contained in a section 602 petition and waive time for the pronouncement of judgment. Entry of judgment is deferred. After the successful completion of a term of probation, on the motion of the prosecution and with a positive recommendation from the probation department, the court is required to dismiss the charges. The arrest upon which judgment was deferred is deemed never to have occurred, and any records of the juvenile court proceeding are sealed. (§§ 791, subd. (a)(3), 793, subd. (c).)" (*Martha C. v. Superior Court* (2003) 108 Cal.App.4th 556, 558 (*Martha C.*).)

The determination of whether to grant DEJ requires consideration of "two distinct essential elements of the [DEJ] program," viz., "*eligibility*" and "*suitability*." (*In re Sergio R.* (2003) 106 Cal.App.4th 597, 607, fn. 10 (*Sergio R.*).) A minor is eligible for DEJ under section 790 if he or she is accused in a juvenile wardship proceeding of committing a felony offense and all of the following circumstances apply: "(1) The minor has not previously been declared to be a ward of the court for the commission of a felony offense. [¶] (2) The offense charged is not one of the offenses enumerated in subdivision (b) of Section 707. [¶] (3) The minor has not previously been committed to the custody of the Youth Authority. [¶] (4) The minor's record does not indicate that

6

probation has ever been revoked without being completed. [¶] (5) The minor is at least 14 years of age at the time of the hearing. [¶] (6) The minor is eligible for probation pursuant to Section 1203.06 of the Penal Code." (§ 790, subd. (a)(1)-(6).)[3]

After eligibility is determined, the juvenile court has the ultimate discretion to rule on the suitability of the minor for DEJ after it considers the factors specified in California Rules of Court, rule 5.800 and section 791, subdivision (b), and based on the standard of whether the minor will derive benefit from treatment, education, and rehabilitation rather than a more restrictive commitment. (*In re Luis B.* (2006) 142 Cal.App.4th 1117, 1123 (*Luis B.*); *Martha C.*, *supra*, 108 Cal.App.4th at p. 562.) The factors set forth in section 791, subdivision (b) include the minor's age, maturity, educational background, family relationships, demonstrable motivation, treatment history, if any, and other mitigating and aggravating factors. California Rules of Court, rule 5.800(d)(3) identifies those factors, in virtually identical language and includes the minor's treatment history. (Cal. Rules of Court, rule 5.800(d)(3)(A)(i).) A court may deny DEJ to an eligible minor "only if it determines the minor would not benefit from the education, treatment or rehabilitation available through the [DEJ] program." (*Martha C.*, *supra*, 108 Cal.App.4th at p. 560.)

The determination to grant or deny DEJ may be reversed only upon a showing of abuse of discretion. Denial of DEJ is not an abuse of discretion merely because the minor has satisfied the eligibility requirements of the statute and rule of court. (*Sergio R., supra,* 106 Cal.App.4th at p. 607.) Judicial discretion is abused only if it results in an arbitrary or capricious disposition, or implies whimsical thinking, or exceeds the bounds of reason. (*People v. Giminez* (1975) 14 Cal.3d 68, 72.)

We initially note the juvenile court in the instant action did not casually evaluate the evidence of appellant's suitability for DEJ. We agree with the court that the DEJ

---

[3] There is no dispute that appellant was eligible for DEJ.

7

determination was a close issue. In its evaluation, the court found factors such as appellant's prior expulsion from school, running away from home, and poor school discipline to be what it called "old news." The court further discounted appellant's use of marijuana noting that such use would disqualify many or most juveniles for DEJ.

The court was most disturbed by two facts: (1) appellant let gang members into his own home, and (2) the gang members gained access to firearms that could be used in the commission of additional crimes. The court found appellant's behavior appeared to be regressing to his more troubled past when he was expelled from school. The court further found, however, that appellant's crime was sophisticated. Talking to a known gang member, telling him where firearms were stored, when the home would be uninhabited, and leaving a door open to the would-be burglars were not particularly sophisticated actions. There was undeniably preplanning involved, but the crime itself was simple to effectuate.

Although the court noted there was a conflict between appellant and his father that appeared to be appellant's motivation for his conduct, the court placed little or no weight on the fact that defense counsel stated father was willing to enter counseling with appellant. This is an important factor because appellant's poor relationship with his father appeared to be his primary motivation in committing the offense.

By the time appellant appeared for the joint jurisdiction/disposition hearing, he was on house arrest. At the conclusion of the joint jurisdiction/disposition hearing, appellant was ordered to finish the remainder of his 60-day commitment on house arrest. Clearly appellant was not seen as a threat to the community and the juvenile court did not view his parents at any point in the proceedings as ineffectual in disciplining him. Equally important, school officials spoke very positively about appellant, noting appellant's good manners, respectfulness, contribution to class discussion, lack of disciplinary issues, and excellent academic record.

8

We are concerned that the juvenile court may have placed too much emphasis on what it viewed as the sophistication of appellant's offense as a primary factor for denying DEJ. As we already noted, appellant's offense was not sophisticated and was executed with little planning. We are also concerned that the juvenile court appeared to focus its findings almost exclusively on gang evidence, but did not review evidence concerning appellant's amenability to rehabilitation.

We agree with the juvenile court that the question of whether appellant is suitable for DEJ is a close issue. On balance, however, we believe the juvenile court placed too much weight on the incorrect factor of the sophistication of the offense and failed to more carefully weigh evidence related to appellant's capacity to rehabilitate. We therefore reverse the juvenile court's order denying appellant DEJ.

## DISPOSITION

The juvenile court's jurisdiction and disposition orders are vacated. The matter is remanded to the juvenile court for determination of whether appellant is suitable for deferred entry of judgment without reference to the sophistication of the offense. In making this determination, the juvenile court shall consider all of the evidence of appellant's amenability to rehabilitation, and may consider evidence bearing on the questions of whether placing appellant on regular probation is a more restrictive commitment than DEJ probation and whether appellant requires a more restrictive commitment to effectuate his rehabilitation. If the juvenile court does not find appellant amenable to DEJ, it may reinstate its orders from the joint jurisdiction/disposition hearing.

9