Filed 2/20/14  In re Johnny S. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re JOHNNY S., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, | F066572 |
| Plaintiff and Respondent, | (Super. Ct. No. 511830) |
| v. | |
| JOHNNY S., | **OPINION** |
| Defendant and Appellant. | |

-ooOoo-

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Stanislaus County.  Shawn D. Bessey, Judge.

Suzanne M. Morris, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Rebecca Whitfield, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Poochigian, Acting P.J., Detjen, J. and Peña, J.

Minor Johnny S. was found to have committed vehicle theft (Veh.Code, § 10851, subd. (a); count 1) and evasion of a peace officer (Veh.Code, § 2800.2, subd. (a); count 2). The juvenile court placed him on formal probation subject to certain terms and conditions. He appealed.[1] We reversed and remanded for the juvenile court to provide notice to Johnny S.'s mother regarding his eligibility for deferred entry of judgment (DEJ) and to consider his suitability for DEJ. The court found him unsuitable. He appeals again, contending the juvenile court again failed to notify his mother as required by statute and abused its discretion when it found him unsuitable for DEJ. We conclude the failure to notify was harmless, and we find no abuse of discretion in the finding of unsuitability. Accordingly, we will affirm the juvenile court's orders.

## FACTS

On the evening of June 3, 2011, Adriana Perez loaned her 1997 Nissan Quest minivan to her boyfriend, Peter Ayarza. Ayarza drove the minivan to La Huaraca nightclub, where he worked, and parked it in the club's parking lot. Ayarza thought he left the keys in the unlocked minivan.

Around 2:00 a.m. on June 4, 2011, Ayarza finished work, went into the parking lot, and discovered the minivan was missing. Ayarza asked the nightclub's security guard about the minivan. The security guard said he noticed someone driving away in the minivan and just assumed that Ayarza's girlfriend had picked it up. Ayarza called the police. He also called Perez and arranged for a mutual friend to drive her to the nightclub to pick him up. Ayarza and Perez met an officer at the nightclub to report the stolen minivan.

---

[1]    We take judicial notice of the record and opinion in case No. F063499. (Evid. Code, §§ 452, 459.)

2.

After making the report, Ayarza and Perez headed home in their friend's car. As Ayarza drove home, they saw the stolen minivan pull out of the driveway of another nightclub and stop at an intersection. They were about 10 minutes away from the location where the minivan had been stolen.

Perez and Ayarza saw two people sitting in the minivan's front seat. They described the driver as chubby with short hair, and the passenger as thinner and taller.

Ayarza turned his friend's car around and followed the minivan. Perez called the police and described the minivan's location. The minivan accelerated and tried to evade Ayarza.

Stanislaus County Sheriff's Deputy Moreno was already in the area responding to another dispatch, when he saw Ayarza following the speeding minivan. The speeding minivan approached Moreno and the woman to whom he was speaking. Seeing that the minivan was heading right at them and not slowing down, he shouted at the woman and she stopped herself as the minivan sped past her. Moreno made sure she was okay, then he activated his patrol car's siren and lights, pursued the minivan, and attempted to conduct a traffic stop. The minivan failed to stop, Moreno followed the minivan, and Ayarza followed Moreno.

As the pursuit continued, the minivan traveled over 55 miles per hour. The minivan went through a stop sign, lost control at a corner, swerved on and off the road, and drove across the front yard of a residence. The minivan turned into an alley, crashed into a fence and building, and finally stopped.[2] Two people ran out of the minivan's passenger door.

Deputy Moreno apprehended Johnny S. in the area. Moreno asked Ayarza to look at Johnny S. while seated in his patrol car. Ayarza immediately identified Johnny S. as

---

**2** According to the probation report, the minivan was so damaged that it could not be driven and had to be towed from the area for extensive repairs.

the minivan's driver. Perez and Ayarza also identified the minivan as their stolen vehicle. The keys were never recovered.

At trial, both Perez and Ayarza identified Johnny S. as the minivan's driver based on their observations when they saw the stolen minivan pulling out of the other nightclub parking lot and traveling on the street.

*Defense Evidence*

Johnny S. admitted he was in the stolen minivan, but he insisted he never drove it and did not know it was stolen until just before it crashed. He testified that a friend picked him up in the minivan around 11:00 p.m. They drove around and went to another friend's house. His friend started the minivan with a set of keys and drove the minivan the entire time Johnny S. was in the vehicle. As the friend was driving Johnny S. home, the deputy tried to conduct the traffic stop. His friend refused to stop and told Johnny S. that the minivan was stolen. After the minivan crashed, Johnny S. ran away because he did not want to get caught. Johnny S. refused to identify the person who was driving the minivan.

## DISCUSSION

**I.    DEJ**

The DEJ provisions of Welfare and Institutions Code section 790 et seq.[3] "provide that in lieu of jurisdictional and dispositional hearings, a minor may admit the allegations contained in a section 602 petition and waive time for the pronouncement of judgment. Entry of judgment is deferred. After the successful completion of a term of probation, on the motion of the prosecution and with a positive recommendation from the probation department, the court is required to dismiss the charges. The arrest upon which judgment was deferred is deemed never to have occurred, and any records of the juvenile court

---

**3**    All further statutory citations are to the Welfare and Institutions Code unless otherwise noted.

4.

proceedings are sealed.  [Citations.]" (*Martha C. v. Superior Court* (2003) 108 Cal.App.4th 556, 558 (*Martha C.*).)

The determination of whether to grant DEJ requires consideration of "two distinct essential elements of the [DEJ] program"—"eligibility" and "suitability." (*In re Sergio R.* (2003) 106 Cal.App.4th 597, 607, fn. 10, italics omitted (*Sergio R.*).)  "Under section 790, the prosecuting attorney is required to determine whether the minor is *eligible* for DEJ.  Upon determining that a minor is eligible for DEJ, the prosecuting attorney 'shall file a declaration in writing with the court or state for the record the grounds upon which the determination is based, and shall make this information available to the minor and his or her attorney.'  (§ 790, subd. (b).)  The form designed for this purpose is a [Determination of Eligibility—Deferred Entry of Judgment—Juvenile] form JV-750, the completion of which requires the prosecutor to indicate findings as to the eligibility requirements by checking, or not checking, corresponding boxes.  (Cal. Rules of Court, rule 5.800(b).)  If a minor is found eligible for DEJ, form JV-751, entitled 'Citation and Written Notification for Deferred Entry of Judgment—Juvenile,' is used to notify the minor and his or her parent or guardian.  There is a box to check on the JV-750 form indicating that the JV-751 form is attached." (*In re C.W.* (2012) 208 Cal.App.4th 654, 659 (*C.W.*), italics added.)[4]  "The court must issue Citation and Written Notification for Deferred Entry of Judgment—Juvenile (form JV-751) to the child's custodial parent, guardian, or foster parent.  The form must be personally served on the custodial adult at least 24 hours before the time set for the appearance hearing." (Rule 5.800(c), italics omitted.)

"In addition, the prosecutor's 'written notification to the minor' of the minor's eligibility must include, inter alia, '[a] full description of the procedures for deferred

---

[4]     All further citations to rules are to the California Rules of Court, unless otherwise noted.

5.

entry of judgment' (§ 791, subd. (a)(1)) and '[a] clear statement that, in lieu of jurisdictional and disposition hearings, the court may grant a deferred entry of judgment with respect to any offense charged in the petition, provided that the minor admits each allegation contained in the petition and waives time for the pronouncement of judgment' (§ 791, subd. (a)(3))." (*C.W., supra,* 208 Cal.App.4th at p. 660.)

"Once the threshold determination of eligibility is made, the juvenile trial court has the ultimate discretion to rule on the minor's *suitability* for DEJ. [Citation.] Suitability for DEJ is within the court's discretion after consideration of the factors specified by statute and rule of court, and based upon the standard of whether the minor will derive benefit from ""education, treatment and rehabilitation"" rather than a more restrictive commitment. [Citation.]" (*C.W., supra,* 208 Cal.App.4th at p. 660, italics added.) "[T]he statutory language empowers but does not compel the juvenile court to grant" DEJ. (*Sergio R., supra,* 106 Cal.App.4th at p. 605.) "While such eligibility is a necessary condition for DEJ, it is not alone a sufficient basis. Under proper circumstances the court may refuse DEJ even to minors eligible under section 790, subdivision (a). [Citation.]" (*Martha C., supra,* 108 Cal.App.4th at p. 560.) If the prosecuting attorney finds the minor eligible, the court has a "mandatory … duty … to either summarily grant DEJ or examine the record, conduct a hearing, and make 'the final determination regarding education, treatment, and rehabilitation ….' [Citations.]" (*In re Luis B.* (2006) 142 Cal.App.4th 1117, 1123.) Thereafter "the court retains discretion to deny DEJ to an eligible minor …." (*Ibid.*) "The court is not required to ultimately grant DEJ, but is required to at least follow specified procedures and exercise discretion to reach a final determination once the mandatory threshold eligibility determination is made. [Citation.]" (*Ibid.*)

Thus, the fact that the minor meets the statutory criteria for eligibility does not mean the minor is automatically entitled to DEJ. Rather, a grant of DEJ is a matter addressed to the discretion of the juvenile court. (*Sergio R., supra,* 106 Cal.App.4th at

6.

pp. 604-605, 607.) The juvenile court must determine whether the minor is suitable for DEJ, taking into account the minor's age, maturity, educational background, family relationships, demonstrable motivation, treatment history, and other mitigating and aggravating factors. (§ 791, subd. (b); see rule 5.800(d) [if probation report is ordered, it must address these factors and any other relevant factors regarding the benefit the child would derive from education, treatment, and rehabilitation efforts and programs best suited to assist the child and the child's family].)

Although the probation department reports its findings and recommendations to the court, the court is not bound by these recommendations and is charged with making the final independent determination of suitability. (*Martha C., supra,* 108 Cal.App.4th at p. 561; *In re Robert H.* (2002) 96 Cal.App.4th 1317, 1329.) Denial of DEJ is proper "only when the trial court finds the minor would not benefit from education, treatment and rehabilitation." (*Martha C., supra,* at p. 561.) In making such a determination, the court may find that the circumstances of a crime indicate a minor is not amenable to rehabilitation. (*Id.* at p. 562.)

We may reverse the juvenile court's determination only upon a showing of abuse of discretion. (*Sergio R., supra,* 106 Cal.App.4th at p. 607; *In re Robert H., supra,* 96 Cal.App.4th at pp. 1329-1330.) An abuse of discretion occurs only when the trial court "'exceeds the bounds of reason, all of the circumstances before it being considered.'" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.)

## II. Procedural Background

According to the record on appeal (after our remand), on November 21, 2012, Johnny S. signed a promise to appear at a hearing on December 21, 2012. The form states that Johnny S. was released to his mother. Printed on the bottom of the form are instructions that the original of the form goes to the court and that copies go to the minor, the parent, and the probation department.

7.

On December 21, 2012, the juvenile court held a hearing to discuss the remand of the case for DEJ consideration. Johnny S. was present, but there is no indication in the record that his mother was present.[5] The court requested that the probation department prepare a DEJ suitability report.

On December 28, 2012, the probation department filed a DEJ suitability report based on information available at the time the June 7, 2011 petition was filed. The report found Johnny S. unsuitable for DEJ based on the nature of the crimes, his grades, his expulsion for fighting, his suspension for excessive tardiness, and his use of marijuana. The report also noted that Johnny S.'s mother stated that Johnny S. needed to serve his time in juvenile hall if he was found to be responsible for the crimes.

On January 10, 2013, the juvenile court held a DEJ suitability hearing. Johnny S. and his mother were present. The parties argued Johnny S.'s suitability before the court. The court considered the DEJ suitability report and took the matter under submission.

On January 17, 2013, Johnny S. and his mother returned for the review hearing. The court addressed the circumstances of the crimes, noting that the incident occurred in the early morning, Johnny S. was the driver of the stolen minivan, he almost hit a pedestrian, he led the police on a chase with lights and sirens, and he drove recklessly at a high speed through stop signs and stop lights, eventually crashing to a stop. The court explained that these facts showed an indifference toward the safety of his passenger, the police, and the general public. After the crash, Johnny S.'s flight from the officers showed a disregard for their commands and attempts to contact him. The court also considered Johnny S.'s intake statement that he had some issues at school, smoked marijuana, had a bad attitude at home, and was not following his mother's directives.

---

[5] The minute order does not show a checked box for mother's presence, but it also does not show a checked box for Johnny S.'s presence and the transcript establishes he was there. The minute orders for the hearings on January 10, 2013, and January 17, 2013, show checked boxes for both mother and Johnny S.

The mother was aware of his marijuana use and poor grades, and felt he needed time in juvenile hall. The court concluded Johnny S. was not suitable for DEJ, and would benefit from the higher level of supervision provided by formal probation.

## II. Notification of Johnny S.'s Mother

Johnny S. argues that the failure to notify his mother as required by statute was reversible error. We conclude it was harmless.

In our prior opinion, we found no evidence that Johnny S.'s mother, as his custodial parent, received notice of his DEJ eligibility, either by personal service of forms JV-750 and JV-751, or during any of the juvenile proceedings in this case. The mother was present at all the hearings, but there was no mention of DEJ at those hearings.

We agreed with the analysis in *C.W.*, *supra,* 208 Cal.App.4th 654, where the court stated: "[W]e do not have a completely silent record. Rather, the record affirmatively reflects that the prosecuting attorney did not check the box indicating that a citation and notification regarding DEJ (form JV-751) was attached. Moreover, no form JV-751 appears in the record, nor is there any evidence that the juvenile court served C.W. and her parent or guardian with such a form, as required by … rule 5.800(c). Likewise, DEJ was never mentioned at any of the hearings. In our view, the existence of these omissions, in the context of an otherwise complete record, is sufficient to rebut the presumption that C.W. was properly advised of her DEJ eligibility either by the prosecutor or by the juvenile court. [Citation.]" (*C.W., supra*, at pp. 660-661.)

Accordingly, we remanded for the court not only to consider Johnny S.'s suitability, but also to provide notice to Johnny S.'s mother. The record suggests, however, that after remand no formal statutory notice was given to Johnny S.'s mother, despite our instructions. The record contains no JV-751 form, which would have informed the mother that Johnny S. was eligible to be considered for DEJ, ordered the mother to appear at a certain place and time for a hearing to consider whether to grant DEJ, and notified her that she may be required to participate in a program with Johnny S.

9.

The form also would have explained some of the details of DEJ, factors the court would consider, and possible conditions of probation. The form should have been served on the mother at least 24 hours before the DEJ suitability hearing. Inexplicably, that failed to happen again. Nevertheless, we are convinced the error was harmless. Even if the mother had been properly notified of the DEJ suitability hearing, the outcome of the hearing would not have been different. First, we note that under these facts, it is likely the mother had actual notice that Johnny S. was eligible for DEJ, assuming she received a copy of the form signed by Johnny S. But whether she did or not, she was present at the two hearings in January 2013 in which the juvenile court considered and discussed Johnny S.'s suitability. Furthermore, the information considered by the court was limited to information that was available at the time of the June 7, 2011 petition. This information, including the mother's input, had already been collected and any new facts or events were irrelevant. Under these circumstances, we conclude the failure to comply with the specific requirements of statutory notice was harmless beyond a reasonable doubt. (*In re James F.* (2008) 42 Cal.4th. 901, 915 [harmless error analysis appropriate because, unlike structural error, prejudice could be determined without "'a speculative inquiry into what might have occurred in an alternate universe'"]; *id.* at p. 918 ["If the outcome of a proceeding has not been affected, denial of a right to notice and a hearing may be deemed harmless and reversal is not required."]; see also *In re A.D.* (2011) 196 Cal.App.4th 1319, 1326-1327.)

## III. Suitability for DEJ

Johnny S. contends the juvenile court abused its discretion when it found him unsuitable for DEJ because the court's findings did not establish that he would not benefit from treatment, education, or rehabilitation. We disagree.

The juvenile court properly considered the facts of Johnny S.'s crimes, his behavior at school and home, his marijuana use, and his mother's opinion. Johnny S.'s vehicle theft was a reckless and dangerous crime by virtue of the high-speed chase he

10.

instigated. He nearly hit a pedestrian as he sped past her. At school, he had been expelled for fighting and suspended for tardiness, and his grades were poor. His own mother felt he needed to be incarcerated. These factors were all relevant to whether he could benefit from the education, treatment, or rehabilitation of the DEJ program or instead needed a more restrictive program. The court expressly found that DEJ would not provide the supervision Johnny S. needed, which he could get from formal probation. Even if we discount the factors about his noncompliant behavior at home as too remote, as Johnny S. urges, we still conclude the court's decision to deny DEJ did not fall outside the bounds of reason. We find no abuse of discretion.

## **DISPOSITION**

The juvenile court's orders are affirmed.