Filed 3/19/14  In re Max R. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re MAX R., a Person Coming Under the Juvenile Court Law. | B247719 <br><br> (Los Angeles County <br> Super. Ct. No. VJ42618) |
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> MAX R., <br><br> Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Philip K. Mautino, Judge.  Affirmed.

Laini Millar Melnick, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews and Timothy M. Weiner, Deputy Attorneys General, for Plaintiff and Respondent.

_____

The juvenile court sustained a petition pursuant to Welfare and Institutions Code section 602[1] alleging Max R. had committed battery on school property, declared him a ward of the court and ordered him home on probation. On appeal Max contends the evidence was insufficient to support the battery finding and the provisions in the Welfare and Institutions Code authorizing the deferred entry of judgment when an eligible minor has committed a felony offense, but not a misdemeanor, violate equal protection. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Jose G., a high school classmate of Max's, testified that he and Max had started running to the locker room at the end of their physical education class when he turned and saw Max swing at him with his fist. Max's friends started laughing as Jose ran around the corner of the building. About 15 seconds later Max pushed Jose against the building. Jose's face hit the wall, and he fell to the ground. Max apologized to Jose, but he and his friends were laughing. After Jose was treated at a hospital, he was required to wear a neck brace and experienced blurry vision and difficulty walking.

At the close of the People's evidence, the juvenile court denied Max's motion to dismiss the petition for insufficient evidence (§ 701.1) without comment.

James Alonzo, a teacher at the high school, testified as a defense witness that Jose had said he and Max were racing to the lockers when Max grabbed him, shoved his head into a wall and repeatedly struck him until other students arrived. The parties stipulated Jose had told Los Angeles County Deputy Sheriff Hoarsely that he had been running next to the wall when the right side of his face suddenly hit the wall. Jose did not know if Max had hit him. The parties further stipulated that Hoarsely observed no swelling, scratches or redness on Jose's face and that Jose never told the deputy he had been struck several times by Max after hitting the wall.

Max testified in his own defense and denied attempting to strike Jose or intentionally pushing him against the wall. According to Max, he was running to the

---

[1] Statutory references are to the Welfare and Institutions Code unless otherwise indicated.

locker room because he was late.  Jose believed Max, who was beside him at the time, thought the two of them were racing.  Because Jose wanted to win, he jumped in front of Max, causing Max to lose his balance and trip.  Max collided with Jose, and both of them hit the wall.  Max offered to help Jose stand up, but Jose did not want his assistance. Max had trouble standing up, which prompted him to laugh.

## DISCUSSION

1. *Substantial Evidence Supports the Finding Max Willfully Used Force or Violence Against Jose*

A battery is any willful and unlawful use of force or violence upon the person of another.  (Pen. Code, § 242.)  "'Any harmful or offensive touching constitutes an unlawful use of force or violence.'"  (*People v. Shockley* (2013) 58 Cal.4th 400, 404.) Battery on school property includes the additional element the offense occurred on school property as defined in Penal Code section 243.2, subdivision (b)(3).

Jose testified, after Max threw a punch at him, Max pushed him, slamming his face against the wall—plainly a battery.  Max's challenge to the sufficiency of this evidence is only that Jose's version of the event repeatedly changed.[2]  The juvenile court,

---

[2]   The same standard governs our review of the sufficiency of evidence in juvenile cases as in adult criminal cases:  "[W]e review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt.  [Citation.]  The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citation.]  In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence.  [Citation.] 'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.  [Citation.]  We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence.  [Citation.]'  [Citation.]  A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict."  (*People v. Zamudio* (2008) 43 Cal.4th 327, 357; accord, *People v. Manibusan* (2013) 58 Cal.4th 40, 87; see *In re Matthew A.* (2008) 165 Cal.App.4th 537, 540.)

the sole finder of fact, saw and heard Jose's testimony as well as the testimony of defense witnesses and found Jose credible. It is not our function to reweigh that evidence. (*People v. Albillar* (2010) 51 Cal.4th 47, 60 [reviewing court neither reweighs evidence nor reevaluates a witness's credibility].)

To be sure, if a witness's testimony is physically impossible or patently false on its face, we are not obligated to accept it. (See *People v. Thompson* (2010) 49 Cal.4th 79, 124; *People v. Elliott* (2012) 53 Cal.4th 535, 585.) Jose's account of the attack was neither. Substantial evidence supports the juvenile court's finding Max committed battery as alleged.

2. *The Provisions for Deferred Entry of Judgment Are Not Unconstitutional*

The Welfare and Institutions Code provisions for deferred entry of judgment (DEJ) "'[were] enacted as part of Proposition 21, The Gang Violence and Juvenile Crime Prevention Act of 1998, in March 2000. The [sections provide] that in lieu of jurisdictional and dispositional hearings, a minor may admit the allegations contained in a section 602 petition and waive time for the pronouncement of judgment. Entry of judgment is deferred. After the successful completion of a term of probation, on the motion of the prosecution and with a positive recommendation from the probation department, the juvenile court is required to dismiss the charges. The arrest upon which judgment was deferred is deemed never to have occurred, and any records of the [juvenile] court proceeding are sealed.'" (*In re Spencer S.* (2009) 176 Cal.App.4th 1315, 1324 (*Spencer S.*); see §§ 791, subd. (a)(3), 793, subd. (c).)

To come within the purview of the DEJ statutes, a minor must not previously have been declared a ward of the court for commission of a felony offense and must be charged with a crime not listed in section 707, subdivision (b) (serious or violent offenses creating presumption of unfitness for juvenile jurisdiction), or Penal Code section 1203.06 (crimes rendering offender ineligible for probation). (§ 790, subd. (a).) An eligible minor must also be found suitable for rehabilitation by the juvenile court, a decision that is committed to the court's discretion. (*In re Sergio R.* (2003) 106 Cal.App.4th 597, 606-607; see § 790, subd. (b); Cal. Rules of Court, rule 5.800(b)(2)

4

["[i]f the court determines that the child is eligible and suitable for deferred entry of judgment, and would derive benefit from education, treatment, and rehabilitation efforts, the court may grant deferred entry of judgment"].) The procedures for considering DEJ reflect a "'strong preference for rehabilitation of first-time nonviolent juvenile offenders'" and limit the court's power to deny DEJ in those cases in which the juvenile court has found that "'the minor would not benefit from education, treatment and rehabilitation.'" (*In re A.I.* (2009) 176 Cal.App.4th 1426, 1434.)

Max asserts, although he otherwise met the qualifying criteria, his exclusion from eligibility for DEJ merely because the offense alleged was a misdemeanor, not a felony, violated his right to equal protection.[3]

The limitation of DEJ to juveniles who are subject to section 602 petitions alleging felony offenses was thoroughly addressed in *Spenser S.*, *supra,* 176 Cal.App.4th 1315. There, as here, the minor was alleged to have committed misdemeanor offenses only. On appeal he argued limiting the availability of DEJ to juveniles alleged to have committed felony offenses violated his right to equal protection. (*Id.* at pp. 1320-1321.) The Court of Appeal rejected this contention, explaining the voters' stated purposes in adopting the DEJ provisions included focusing greater resources on first-time nonviolent offenders charged with felony offenses with the potential for rehabilitation, who would be required to "'appear in court, admit guilt for their offenses, and be held accountable, but also be given a non-custodial opportunity to demonstrate through good conduct and compliance with a court-monitored treatment and supervision program that the record of the juvenile's offense should justly be expunged.' (Voter Information Guide, Primary Elec. (Mar. 7, 2000) text of Prop. 21, § 2, subd. (j), p. 119.)" (*Spencer S., supra*, 176 Cal.App.4th at p. 1327.)

---

[3]    The People claim Max has forfeited this issue by failing to raise it in juvenile court. However, this court has discretion to consider issues of constitutional significance involving pure questions of law, presented for the first time on appeal. (*In re Sheena K.* (2007) 40 Cal.4th 875, 887-888 & fn. 7; *Spencer S., supra,* 176 Cal.App.4th at p. 1323.)

The *Spencer S.* court also explained Proposition 21 had established more severe penalties for juveniles whose offenses qualified as felonies.  "[I]n the aftermath of Proposition 21, informal probation pursuant to programs of supervision is generally unauthorized for juvenile felons aged 14 and older.  (§ 654.3, subd. (h).)  A juvenile felon's complete criminal history is reported to the Department of Justice . . . .  (§ 602.5.)  And, subject to age restrictions, a juvenile charged with a felony, who has already suffered two prior felony findings, is presumed unfit for juvenile court jurisdiction, a presumption that may only be overcome with evidence."  (*Spencer S., supra*, 176 Cal.App.4th at p. 1328.)  The *Spencer S.* court concluded, "[T]he DEJ law's exclusion of juvenile misdemeanants from its benefits" was justified because of the "severe consequences otherwise applicable" to juveniles alleged to have committed felony offenses as well as the facts that juveniles who had committed misdemeanors were less likely to clog the courts and were eligible for records sealing under several other statutes.  (*Id*. at pp. 1328-1329.)  In sum, having assumed for purposes of analysis that juvenile offenders who were alleged to have committed felony and misdemeanor offenses are similarly situated with respect to the challenged provisions (*id.* at p. 1325), the *Spencer S.* court held DEJ did not violate equal protection.  We see no reason in this case to depart from the analysis and conclusion of *Spencer S.*  As explained in Proposition 21's uncodified findings and declarations, the DEJ law was intended to "form part of a comprehensive juvenile justice reform package" that incorporated, among other elements, "expanded informal juvenile court alternatives for low-level offenders . . . which emphasize rehabilitative protocols over incarceration."  (Voter Information Guide, Primary Elec. (Mar. 7, 2000), *supra*, at p. 119.)  By ordering Max home on probation after sustaining the allegation he had committed only a misdemeanor offense, the juvenile court provided him the benefit of one of those alternatives.  The constitutional guarantee of equal protection requires nothing more.

**DISPOSITION**

The juvenile court's order is affirmed.

PERLUSS, P. J.

We concur:

ZELON, J.

SEGAL, J.[*]

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.