Filed 10/20/14  In re Erik B. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re ERIK B., a Person Coming Under the Juvenile Court Law. | D064889 |
| THE PEOPLE, | |
| Plaintiff and Respondent, | (Super. Ct. No. JCM234188) |
| v. | |
| ERIK B., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Polly H. Shamoon, Judge.  Affirmed with directions.

Andrea S. Bitar, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr. and Parag Agrawal, Deputy Attorneys General, for Plaintiff and Respondent.

At the age of 16, defendant and appellant Erik B. came to the attention of a police officer when his mother informed the officer she was having a lot of problems with him and was concerned about his drug use. Erik's mother told the officer where Erik and his friends usually spent their time together, and the officer found Erik with two of his friends and spoke to them. During the course of the contact, the officer conducted a search of Erik and found him in possession of both marijuana and cocaine. Erik was then charged with possession of the drugs.

After Erik's motion to suppress was denied, a disputed jurisdictional hearing was held and the charges were found true. Prior to disposition, the mother reported to a probation officer that she was continuing to have serious disciplinary problems with Erik and was concerned his involvement with drugs would lead to more grave problems. At a disposition hearing, the juvenile court committed Erik to a rehabilitation program, Breaking Cycles.

As we explain, we find no error in the juvenile court's jurisdictional and dispositional orders. Although the prosecutor failed to give the juvenile timely notice of his possible suitability for a deferred entry of judgment (DEJ) program under Welfare and Institutions Code section 790,[1] the trial court fully remedied that error by conducting a DEJ hearing, which showed that Erik was not a candidate for treatment under section 790.

We also reject Erik's supplemental contention that his search, prompted by his

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

mother's report of his potential drug use, was unlawful. We do agree with his contention that he was not given credit for his predisposition detention and direct that he be given credit.

Thus, we order the trial court to file an amended minute order reflecting Erik's detention credits. In all other respects, the trial court's order is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

On Wednesday September 18, 2013, Erik's mother contacted National City Police Officer Salvador Gil. Erik's mother reported she was having a lot of problems with Erik and, in particular, his use of drugs. Erik's father had died two years earlier, after having been incarcerated; Erik's mother believed Erik's father's death was drug related. At the time Erik's mother contacted police, Erik had not been in school for more than a year. Erik's mother told Officer Gil where Erik and his friends usually spent their time, and Officer Gil told Erik's mother he would look for Erik.

Officer Gil found Erik and two of his friends, who were also minors, at approximately 1:16 p.m. on the day he spoke to Erik's mother. Officer Gil asked them if they had anything illegal on them or if anyone was on probation. All three individuals consented to a search. Officer Gil searched Erik and found two cigarettes that contained a green leafy substance Officer Gil believed was marijuana and a clear plastic bag that contained a white, crystal-like substance Officer Gil believed was methamphetamine. The substances were found in Erik's jacket pocket and wallet. Erik was arrested and transported to the police station.

At the station, Gil tested the green leafy substance and found it was 1.5 grams of

3

marijuana. The crystal-like substance found on Erik was later tested and determined to be cocaine.

On September 20, 2013, the San Diego County District Attorney filed a petition pursuant to Welfare and Institutions Code section 602 alleging that Erik committed two misdemeanor violations: possession of a controlled substance, methamphetamine (Health & Saf. Code, § 11377, subd. (a); count 1) and possession of marijuana (Health & Saf. Code, § 11357, subd. (b); count 2). Erik denied the allegations.

On October 15, 2013, an amended petition was filed alleging that Erik committed felony possession of cocaine (Health & Saf. Code, § 11350, subd. (a); count 1) and misdemeanor possession of marijuana (Health & Saf. Code, § 11357, subd. (b); count 2). Erik denied the amended allegations.

On October 16, 2013, the juvenile court denied Erik's motion to suppress, found the allegations in counts 1 and 2 true, and sustained the petition.

On October 25, 2013, at a special hearing, Erik's counsel informed the juvenile court that Erik had not been notified of his eligibility for DEJ treatment under section 790. In response to the information provided by counsel, the juvenile court set a DEJ hearing. The juvenile court denied Erik's request to set aside its jurisdictional findings and stated: "If the court grants the 790, then I must set aside the true finding that was made at the adjudication, and if the court denies the 790, then we continue the effect of the judgment that was made at the adjudication."

At the DEJ hearing, the court considered a probation report, which recommended that section 790 treatment be denied. The recommendation was based in part on reports

4

from Erik's mother about the difficulty she was having controlling Erik. The probation report stated: "Ms. [S.] reported that the minor has major behavioral issues at home. She stated that Erik's behavior took a turn for the worst around July 2013. She reported that Erik is extremely disrespectful towards her, does not follow her directives, leaves home without permission, does not abide by curfew, and has failed to return home on some occasions. He has been very aggressive in the past and has broken two televisions and punched holes in the wall. Erik refuses to attend school and has not attended school for over a year. According to Ms. [S.], she has attempted to enroll Erik in various schools, to no avail. Regarding Erik's substance abuse issue, she stated that Erik is using marijuana, alcohol, and possibly other drugs. She reported that during August, Erik was taken to the hospital for alcohol intoxication. She also found a letter written by the minor with suicidal thoughts. The minor was admitted to Mesa Vista, held on a 72 hour hold, and released within 48 hours with a diagnosis of depression. She also stated that the minor is associating with negative peers. She reported that it seems like Erik blames himself for the death of his father because he was not there to help his father with his drug addiction. Ms. [S.] expressed she is in need of additional support, as she cannot control the minor." The court denied appellant's request for DEJ and confirmed its true finding made at the jurisdictional hearing.

In denying Erik his request for treatment under section 790, the juvenile court stated: "The great concern that I have with this is the totality of the circumstances that Erik comes here with. And in addition to what the prosecutor has just mentioned, the great concern that I have for some level of violence is Erik's violence to himself. There

5

[have] been prior issues, suicide ideations, one instance he was found with a knife in a letter that was written by Erik noting that he was so depressed after his father's death that he didn't want to live. And it's that type of risk to himself, as well as the risk that he poses to others -- on two separate occasions he was suspended from school, both for major defiance with teachers, and I think that coupled with the fact that over and over again, mom has been trying to get him into stabilized school [*sic*] and cannot succeed, that he has continued to use drugs over and over again, despite the fact that there have been some interventions in trying to modify that behavior.

"It's not that he can't have treatment, education and rehabilitation in the juvenile justice system. 790 is a more informal way of doing it. It's less supervision. And what he has shown . . . by his prior actions is he needs formal supervision, not the supervision he would get under 790."

Having denied section 790 treatment, the juvenile court then proceeded to enter a disposition on its earlier finding of jurisdiction. The court ordered that Erik be committed to the "Breaking Cycles" program and released him to home supervision in the custody of his mother.

DISCUSSION

I

In his principal argument on appeal, Erik claims the juvenile court should have vacated its jurisdictional finding and only then should it have held the hearing on his DEJ suitability. He also contends that the juvenile court erred in denying his application for DEJ. We find no error in the manner in which the juvenile court considered Erik's

6

application for DEJ and in its order denying his application.

A. Section 790 et seq.

"The DEJ provisions of section 790 et seq. were enacted as part of Proposition 21, The Gang Violence and Juvenile Crime Prevention Act of 1998, in March 2000. The sections provide that in lieu of jurisdictional and dispositional hearings, a minor may admit the allegations contained in a section 602 petition and waive time for the pronouncement of judgment. Entry of judgment is deferred. After the successful completion of a term of probation, on the motion of the prosecution and with a positive recommendation from the probation department, the court is required to dismiss the charges. The arrest upon which judgment was deferred is deemed never to have occurred, and any records of the juvenile court proceeding are sealed. (§§ 791, subd. (a)(3), 793, subd. (c).)" (*Martha C. v. Superior Court* (2003) 108 Cal.App.4th 556, 558 (*Martha C.*).)

"To be admitted to the DEJ program, a minor must be eligible under section 790, subdivision (a)." (*Martha C.*, *supra*, 108 Cal.App.4th at p. 560.) As Erik asserts and the Attorney General acknowledges, at all material times he was eligible for consideration for DEJ under section 790, subdivision (a), which occurs "if all of the following apply: [¶] (1) The child is 14 years or older at the time of the hearing on the application for deferred entry of judgment; [¶] (2) The offense alleged is not listed in section 707(b); [¶] (3) The child has not been previously declared a ward of the court based on the commission of a felony offense; [¶] (4) The child has not been previously committed to the California Department of Corrections and Rehabilitation, Division of Juvenile Justice;

7

[¶] (5) If the child is presently or was previously a ward of the court, probation has not been revoked before completion; and [¶] (6) The child meets the eligibility standards stated in Penal Code section 1203.06 [for probation]." (Cal. Rules of Court, rule 5.800(a);[2] see *Martha C.*, at pp. 558–559.)

Importantly, rule 5.800(b) specifies: "*Before filing a petition alleging a felony offense, or as soon as possible after filing*, the prosecuting attorney must review the child's file to determine if the requirements of [rule 5.800](a) are met. If the prosecuting attorney's review reveals that the requirements of [rule 5.800](a) have been met, the prosecuting attorney must file *Determination of Eligibility--Deferred Entry of Judgment--Juvenile* (form JV-750) with the petition." (First italics added.) If the prosecuting attorney finds the minor is eligible for DEJ treatment, "the prosecuting attorney shall file a declaration in writing with the court or state for the record the grounds upon which the determination is based, and shall make this information available to the minor and his or her attorney." (§ 790, subd. (b).) "If it is determined that the child is ineligible for deferred entry of judgment, the prosecuting attorney must complete and provide to the court, the child, and the child's attorney *Determination of Eligibility--Deferred Entry of Judgment--Juvenile* (form JV-750)." (Rule 5.800(e).)

The trial court has the ultimate discretion to rule on the suitability of the minor for DEJ after consideration of the factors specified in rule 5.800(d)(3) and section 791, subdivision (b), and based upon the "'standard of whether the minor will derive benefit

---

2       All further references to rules are to the California Rules of Court

8

from "education, treatment, and rehabilitation" rather than a more restrictive commitment. [Citations.]'" (*Martha C.*, *supra*, 108 Cal.App.4th at p. 562, italics omitted, quoting *In re Sergio R.* (2003) 106 Cal.App.4th 597, 607 (*Sergio R.*).)

"The court may grant DEJ to the minor summarily under appropriate circumstances ([former] rule 1495(d) [now rule 5.800(d)]), and if not must conduct a hearing at which 'the court *shall* consider the declaration of the prosecuting attorney, any report and recommendations from the probation department, and any other relevant material provided by the child or other interested parties.' ([Former] [r]ule 1495(f) [now rule 5.800(f)], italics added.) While the court retains discretion to deny DEJ to an eligible minor, the duty of the prosecuting attorney to assess the eligibility of the minor for DEJ and furnish notice with the petition is mandatory, as is the duty of the juvenile court to either summarily grant DEJ or examine the record, conduct a hearing, and make 'the final determination regarding education, treatment, and rehabilitation . . . .' [Citations.] Use of the mandatory language 'shall' indicates a legislative intent to impose a mandatory duty; no discretion is granted. [Citation.] '"'"Shall" is mandatory, . . . "may" is permissive.' [Citation.]" [Citations.]' [Citation.] The court is not required to ultimately grant DEJ, but is required to at least follow specified procedures and exercise discretion to reach a final determination once the mandatory threshold eligibility determination is made. [Citation.]" (*In re Luis B.* (2006) 142 Cal.App.4th 1117, 1123 (*Luis B.*).)

As here, the prosecuting attorney in *Luis B.* failed to consider whether a minor was eligible for DEJ treatment and no DEJ hearing was ever conducted by the juvenile court. This error required that the trial court's jurisdictional findings and dispositional orders be

9

set aside but not vacated entirely. (*Luis B.*, *supra*, 142 Cal.App.4th at p. 1123.) Rather, in its order remanding the case to the trial court for a DEJ hearing the Court of Appeal directed: "If, as a result of those proceedings, the juvenile court grants DEJ to defendant, it shall issue an order vacating the findings and orders. If the juvenile court denies DEJ to defendant, it shall make its order continuing in effect the judgment, subject to defendant's right to have the denial of DEJ and the findings and orders reviewed on appeal. [Citation.]" (*Id.* at pp. 1123-1124, fn. omitted.)

B. Analysis

Here, upon learning the prosecutor had failed to discharge his duty and consider Erik's DEJ eligibility, the juvenile court provided Erik with the same relief the Court of Appeal ordered in *Luis B.*: a DEJ hearing. The juvenile court's unwillingness to vacate its earlier findings entirely, but instead to forego acting on those findings until it determined whether DEJ was appropriate for Erik, in no manner prejudiced Erik. First, the juvenile court's ruling on the DEJ request makes it clear the circumstances of the underlying offenses had very little to do with its DEJ decision. As the juvenile court's ruling indicates, it was far less concerned about the underyling offenses than Erik's behavior at home, his mental health, and the level of support he needed. Secondly, nothing in section 790 et seq. prevents a court from considering the circumstances of the charged offense in determining whether to order DEJ. (See § 791, subd. (b); rule 5.800(d)(3).) Indeed, in *Sergio R.*, *supra*, 106 Cal.App.4th at page 608, the court relied almost entirely on the circumstances of the charged offenses in affirming the juvenile court's order denying DEJ.

10

In sum, the juvenile court acted properly in holding a DEJ hearing after being advised about the prosecutor's failure to consider Erik's eligibility for DEJ. The juvenile court was not required to vacate its earlier jurisdictional findings.

Contrary to Erik's contention, the juvenile court did not abuse its discretion in denying him DEJ. As we have noted, the juvenile court was very concerned about Erik's previous behavior, repeated abuse of drugs, level of violence and his mother's failed attempts to stabilize him. Of obvious concern as well was Erik's failure, for over a year, to attend school. Another area of concern was Erik's reported depression and his failure to attend counseling. Given these circumstances, Erik was plainly not a candidate for the more relaxed supervision a DEJ program provides. (See *Sergio R.*, *supra*, 106 Cal.App.4th at p. 608.)

## II

By way of a supplemental brief, Erik contends that under the holding in *In re J.G.* (2014) 228 Cal.App.4th 402 (*J.G.*), he was unlawfully detained before he consented to be searched and therefore his consent, as the fruit of an unlawful detention, was invalid. The holding in *J.G.* is readily distinguishable.

A. Search of Erik

According to Officer Gil, after talking to Erik's mother about the problems she was having with him, he drove to Erik's friend Rashad's house, where he found Erik, Rashad and a third juvenile, Emmanuel. Gil called out to the boys as he got out of his police car, and they started walking towards him. They met at some point in front of Gil's car, and he asked them if they had anything illegal on them or if any of them was on probation.

11

They all answered in the negative. Officer Gil then asked them to sit on the curb in front of his car while he waited for a backup officer and ran warrant checks on the boys. According to Officer Gil, he asked them to sit on the curb as a safety measure because he was by himself and waiting for his cover unit. All three agreed to sit on the curb and according to Officer Gil, "I even told them they were not under arrest." Officer Gil then asked the boys if he could search them. All three consented to be searched and, during the course of searching Erik, Officer Gil found the contraband that gave rise to the petition alleging his delinquency. At some point during the contact, a backup officer arrived on the scene; at the time of the hearing on Erik's motion to suppress, Officer Gil could not recall whether the backup officer arrived before or after he asked for consent to search Erik and his two companions.

Emmanuel testified at the hearing on the motion to suppress and stated that he felt free to leave from the beginning of the contact and even when Officer Gil told the boys to sit down: "Like it wasn't anything to be made of a big deal though. It was just like, oh, like, what are you doing type . . . ."

Rashad and Erik testified that they did not feel free to leave and that Erik only consented to be patted down by Officer Gil.

In denying the motion to suppress, the trial court found that, under the totality of the circumstances, a reasonable person would have felt free to leave at the point in time when Officer Gil asked for consent to search. In making that finding, the trial court expressly found that Officer Gil's testimony and Emmanuel's testimony were more credible than Rashad's or Erik's. The trial court also found that in fact Erik consented to

12

be searched rather than simply patted down. Again, the trial court found that Officer Gil was more credible and that in fact Erik consented to a search rather than a pat down.

B. Search in *J.G.*

In contrast to the search of Erik, in *J.G.* the parties agreed there were no circumstances that supported any detention of the juvenile. Moreover, the juvenile was confronted with a considerable level of force and intimidation at the time he was asked to consent to a search. In *J.G.*, the juvenile and his brother were approached by a police officer, questioned about whether they had anything illegal on them, and then asked to sit on a curb. While sitting on the curb, and backed up at that point by three other officers, one of whom had displayed a weapon, the juvenile was asked whether the officer could search his backpack. The juvenile consented. In finding that the juvenile and his brother were unlawfully detained at the time they were asked to sit on the curb, and that the juvenile's later consent was therefore invalid as the fruit of the unlawful detention, the court relied to a significant extent on the officer's accusatory questions. (*J.G.*, *supra*, 228 Cal.App.4th at p. 412.) Those questions are of course similar to the ones Officer Gil asked in this case. However, the court also relied on the considerably higher level of force deployed at the time consent was requested. (*Ibid.*) Importantly, the court noted that at no time were J.G. and his brother told that they were free to leave: "[I]f Officer Woelkers had told J.G. that he was free to decline to sit on the curb, any subsequent acquiescence on J.G.'s part would have strongly suggested that he had not been detained." (*J.G.*, at p. 413, fn. 9.)

C. Analysis

Although in some respects the record here is similar to the situation the court considered in *J.G.*, in material respects it is quite different. First, unlike the situation the court confronted in *J.G.*, here, there were articulable circumstances that supported detention of Erik and his companions. Officer Gil had been informed by Erik's mother that she was very concerned about him, about his companions, and his drug use. Shortly thereafter, Officer Gil found the boys not in school during school hours. Both the report of Erik's drug use and his absence from school during school hours supported detention of the boys. (See *In re Humberto O.* (2000) 80 Cal.App.4th 237, 240-241 [minor under the age of 18 found out of school during school hours may be detained to determine truancy]; accord, *In re James D.* (1987) 43 Cal.3d 903, 917-918.).) Thus, even if the boys were detained, the detention was not unlawful and would not therefore have tainted their later consent to be searched.

In the alternative, we note the testimony of Emmanuel, who stated that the stop was not a very big deal and that he believed he was free to leave. We also have Officer Gil's statement to the boys that they were not under arrest. These circumstances— Emmanuel's belief he was free to leave and Officer Gil's statement to the boys—take this case well outside the holding in *J.G.* and fully support the trial court's determination that, under the totality of the circumstances, the boys were not detained and again that Erik's consent was therefore not the fruit of an unlawful detention.

In sum, because there was no unlawful detention, Erik's later consent to be searched was valid.

14

## III

Erik argues that in calculating his maximum term of confinement, the trial court failed to give him credit for time he spent in predisposition custody. Erik contends he was in custody for a total of 41 days: from September 18, 2013 to October 2, 2013, and then again from October 5, 2013 to October 30, 2013. The Attorney General agrees Erik is entitled to 41 days of predisposition credits. Given these circumstances, we may direct Erik be provided predisposition credits by way of a minute order. (See *In re J.M.* (2009) 170 Cal.App.4th 1253, 1257.)

## DISPOSITION

The court is ordered to file a minute order reflecting that Erik B. is entitled to 41 days of predisposition credit. In all other respects, the judgment is affirmed.


BENKE, Acting P. J.

WE CONCUR:


McINTYRE, J.


IRION, J.

15